IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AARON B. BUSKELL, et al. | : | NO. 13-6630 |

### MEMORANDUM

**Restrepo, J.**                                                                    **May 2, 2014**

The United States of America, on behalf of the Rural Housing Service of the U.S. Department of Agriculture ("RHS"), brings this mortgage foreclosure action against Aaron B. Buskell and Stephanie M. Young. Buskell and Young have not answered the complaint. Now pending before the Court is RHS's motion for default judgment. For the reasons below, I will deny the motion without prejudice.

## I.   FACTS AND PROCEDURAL HISTORY

The facts as pleaded in the complaint are straightforward. On July 12, 2004 and pursuant to Title V of the Housing Act of 1949, 42 U.S.C. § 1471-1490t, RHS loaned the defendants $170,000. Am. Compl., ECF No. 1, ¶ 4. As part of the transaction, the defendants executed a note and mortgage, conveying a property interest to RHS on the defendants' home in Chester County. *Id*. ¶ 5. The mortgage and note are still owned by RHS. *Id*. ¶ 6.

Beginning in April of 2012, the defendants failed to pay the mortgage. *Id*. ¶ 10. The complaint alleges that they now owe RHS $236,226.07, broken out accordingly:

| | |
|---|---|
| Principal balance | $167,529.03 |
| Interest from 03/12/2012 to 09/05/2013 at 5.8750% | $14,615.16 |
| Attorney's Fee at 5.0% of Principal Balance | $8,376.45 |
| Interest Recapture | $37,436.36 |
| Late Charges | $102.76 |
| | $228,059.76 |
| Fees Required w/ Payoff Funds | + $159.49 |
| Fees Currently Assessed | + $8,006.82 |
| | $236,226.07 |

On or around August 24, 2012, RHS sent the defendants a "Notice of Intention to Foreclose" ("the Notice"), which it alleges, but does not demonstrate, was sent by certified mail. *Id.* at Ex. D. The Notice provides the defendants with, among other things, 1) the amount needed to cure the delinquency, 2) notice that the defendants have a right to a discussion with RHS, and, 3) notice that the defendants have the right to an administrative appeal hearing. *Id.*

On November 14, 2013, RHS filed this action. On February 20, 2014, I granted RHS's motion for alternative service. ECF No. 3. Service was completed on February 25, 2014. ECF No. 4. On April 1, 2014, with no answer or responsive pleading filed, RHS requested an entry of default and moved for a default judgment. ECF Nos. 5-7. As in the complaint, the motion for default judgment requests $236,226.07, broken out in the same manner as in the complaint, "[p]lus interest accruing upon the unpaid balance from September 05, 2013 at the daily rate of $22.95 to the date of judgment." Pl.'s Aff., ECF No. 6 at ¶ 4. The only explanation provided by RHS for the various fees and charges it requests is an attestation from its attorney that the amounts are based upon his review of "certain records of the U.S. Department of Agriculture." *Id.*

## II. LEGAL FRAMEWORK

Pursuant to Federal Rule of Civil Procedure 55, motions for default judgment are made through a two-step process. First, a party must seek an entry of default with the clerk. Fed. R.

Civ. P. 55(a). Second, a party seeks the judgment itself. Fed. R. Civ. P. 55(b). When the amount is "for a sum certain or a sum that can be made certain by computation," the clerk will enter the judgment. Fed. R. Civ. P. 55(b)(1). "Such situations are rare, however, and in the vast majority of cases, a judicial determination is necessary to decide the extent of the injury or the valuation of the plaintiff's loss." *Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 07-1066, 2010 WL 1303449, at *2 (E.D. Pa. Mar. 31, 2010) (internal citation and quotation marks omitted).

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted). Moreover, it is well established "that the entry of a default judgment is left primarily to the discretion of the district court," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)), with a judgment for damages entered only after a court has "conduct[ed] an inquiry in order to ascertain the amount of damages with reasonable certainty." *United States v. Brown*, No. 13-4530, 2014 WL 657518, at *1 (E.D. Pa. Feb. 20, 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Finally, default judgments can be especially problematic in areas where defaults are typical:

> An unopposed motion for default judgment can be a tempting invitation to defer automatically to, or at least consider more charitably, the plaintiff's view of the law in addition to his allegations of fact. The invitation is all the more tempting because of the work-intensive paradox that results from declining it: While in our adversarial system, a court's acting *sua sponte* is the exception to the rule, a court evaluating a motion for default judgment must itself ask whether the plaintiff's complaint states claim(s) upon which relief can be granted. Where the complaint fails to state a claim, therefore, the paradox is that the defendant may have better luck by defaulting before an attentive (but unassisted) court than by engaging (and

paying) a lawyer who, for one reason or another, fails to have the same causes dismissed early on with a Rule 12(b)(6) motion.

If, by contrast, the district court accepts the plaintiff's invitation and grants its imprimatur to the plaintiff's unchallenged legal *theory,* the court risks making bad law, even though that law is only persuasive authority, and even though the court is 'confined from molar to molecular motions.' This risk is especially dangerous where a region of the legal landscape is typified by defaults, for default judgments not only often result from one-sided proceedings, but also rarely weather the appellate scrutiny necessary to ensure the law's uniformity.

*Joe Hand Promotions, Inc. v. Yakubets*, --- F. Supp. 2d. ----, No. 12-4583, 2014 WL 960787, *1 (E.D. Pa. Mar. 11, 2014) (quoting *S. Pac. Co. v. Jensen,* 244 U.S. 205, 221 (1917) (Holmes, J., dissenting)) (emphasis in original). As discussed below, the state of the law in this matter appears to suffer from exactly the risks foreseen in *Yakubets*.

## III. DISCUSSION

### A.  Federal Foreclosure Procedures

Within the context of a federally owned mortgage, "[t]he Administrative Procedures Act (APA) applies to the decision to foreclose, as foreclosure by a federal agency under the National Housing Act is typically treated as an administrative decision." *Brown*, 2014 WL 657518 at *1. Accordingly, prior to filing a foreclosure action, RHS must provide delinquent borrowers "with adequate notice of [their] opportunity to be heard before making an adjudicative decision, which in this case would be the decision to foreclose." *Id.* (citing 5 U.S.C. § 554).

In *Brown*, the Court denied for the second time a motion for default in a foreclosure action filed by RHS. *Id.* at *1-3. The initial denial of the motion was for RHS's failure to demonstrate that it properly served its "proof of notice of intent to foreclose," *Id.* at *1, and for RHS's "failure to provide supporting documentation for its calculation of fees and costs which would allow the court to determine with 'reasonable certainty' that the amount of late charges,

attorney's fees, and the like were appropriate," *Id*. at *2. The motion here suffers from similar infirmities.

First, RHS's Notice indicates that it was served by certified mail, but RHS does not include anything by which I could determine whether this actually occurred. Thus, out of an abundance of caution, I will deny the motion without prejudice so that RHS can provide documentation that demonstrates that the defendants actually received notice of their rights under federal law. *See id.* at *1 ("adequate notice of [a defendant's] rights. . . . is important and necessary to the foreclosure process") (denying motion for default).

Second, even assuming RHS establishes that the defendants have defaulted on their mortgage, it has not established its right to the $236,226.07 it seeks in damages. *See id.* at *2 ("While default judgment establishes that the defaulting party is liable for the allegations in the complaint, it does not establish the amount of damages owed by the defendant.") (citing *Bricklayers & Allied Craftworkers v. WaterControl Servs., Inc.*, No. 09–3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012)). RHS seeks $167,529.03 in remaining principal balance on the mortgage and $14,615.16 in interest, from March 12, 2012 to September 5, 2013. However, RHS provides no accounting by which a trier of fact could determine that this is the correct amount due. Next, it asks for $37,436.36 for "Interest Recapture," $102.76 for "Late Charges," $8,006.82 for "Fees Currently Assessed" and $159.49 for "Fees Required w/ Payoff Funds," but provides no indication as to what those fees and charges represent, or why the defendants owe them. Instead, it merely includes an attestation that its attorney conducted a review of "certain records of the U.S. Department of Agriculture." Pl.'s Aff., ECF No. 6 at ¶ 4. This is clearly insufficient. Thus, I will deny RHS' request for damages, because it fails to provide an adequate justification for the judgment amount it seeks. *See id.* at *3-4 (denying

RHS's motion for default judgment for second time with unexplained fees and charges virtually identical to the matter here); *United States v. Martinez*, No. 04-1254, 2004 WL 2827045, *6 (E.D. Pa. Dec. 9, 2004) (denying RHS's motion for summary judgment when asking for similar fees because RHS did not "address[] the relevance of these figures or produce[] any evidence to suggest that it is entitled to these amounts").

RHS may resubmit a motion that allows a fact-finder to determine the amount the defendants owe in principal and interest, and explains the various fees and charges it desires to collect. After reviewing those submissions, I will decide whether a hearing is necessary, pursuant to Federal Rule 55(b)(2).

## B. Pennsylvania Foreclosure Procedures

There is a second problem apparent on the face of the complaint and motion for default judgment: RHS does not appear to have complied with Pennsylvania foreclosure procedures. This apparent failure requires an explanation of those procedures and the federal statute governing when they must be followed by RHS.

### 1. Act 6 and Act 91

In Pennsylvania, most mortgages are governed by the procedural requirements of the Loan Interest and Protection Law ("Act 6"), 41 P.S. §§ 101-605, and the Pennsylvania Homeowner's Emergency Assistance Act ("Act 91"), 35 P.S. §§ 1680.401c-412c. Act 6 provides a homeowner with the right to cure her default; that is, "to restore[] the residential mortgage debtor to the same position as if the default had not occurred." 41 P.S. § 404(c). As part of its statutory scheme, Act 6 requires that prior to accelerating a mortgage or commencing with a foreclosure, a lender must provide the homeowner with a notice of its intention to foreclose. 41 P.S. § 403; *see also Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 344 (E.D. Pa. 2013). Such

notice must include, among other things, an identification of the property at issue, the nature of the default, the right of a borrower to cure the default and the time within which the homeowner may do so. 41 P.S. § 403(c); *see also* Irv Ackelsberg, Residential Mortgage Foreclosure: Pennsylvania Law and Practice § 4.1 (2012) (explaining that "Act 6 requires a foreclosing mortgagee in Pennsylvania to give written notice of its intention" "[i]n order to effectuate the right to cure").

Act 91 has its own procedural requirements. Through Act 91 the Pennsylvania General Assembly "creat[ed] the Homeowner's Emergency Mortgage Assistance Program ("HEMAP") and establish[ed] the Pennsylvania Housing Finance Agency ("PHFA") as the entity responsible for carrying out HEMAP." *Beneficial Consumer Disc. Co. v. Vukman*, 77 A.3d 547, 553 (Pa. 2013) (Saylor, J., concurring). "The purpose of Act 91 was to institute a program to avert extensive mortgage foreclosures and distress homes sales resulting from default caused by conditions beyond the control of homeowners, through emergency mortgage assistance payments." *Id.* at 554. To accomplish this goal, the program provides up to three years of mortgage assistance for homeowners who have found themselves delinquent due to job loss, medical emergency, or other occurrence. *See* 35 P.S. § 1680.405c(f)-(f.1).

Given Act 91's purpose of providing homeowners with emergency mortgage assistance, the procedural requirements a lender must follow are tailored to, first, allow a homeowner to apply for assistance, and second, provide a temporary safe haven for those who timely do so. Thus, before a lender can foreclose it must provide a borrower with notice of her rights under Act 91 and give her thirty-three days to meet with a qualified housing counselor. 35 P.S. § 1680.403c(b)(1); *see also Vukman*, 77 A.3d at 553 ("the Act 91 notice requirements . . . set forth the steps a mortgagee with a cause of action must take *prior to filing for foreclosure*) (emphasis

added); *Bennett v. Seave*, 554 A.2d 886, 889 (Pa. 1989) (noting that providing notice to a borrower insures that available assistance is not made illusory due to a lack of knowledge that the program exists). If a borrower meets with a qualified housing counselor, she is provided an additional thirty days to complete a HEMAP application. 35 P.S. § 1680.403c(b)(4). Once she has completed this application, the law provides an additional sixty days for PHFA to render a decision on the application. 35 P.S. § 1680.403c(b)(6). During this entire time – which can last up to 123 days – a lender may not institute foreclosure proceedings. *Id.*; *see also* Ackelsberg, *supra* at § 4.4.1 (noting that a stay of foreclosure was initially implied by Act 91, then codified by regulation) (citing 12 Pa. Code § 31.203(b)(2)). Finally, while HEMAP is not available for loans insured under Title II of the Federal Housing Act, 35 P.S. § 1680.401c(a)(3), it is available for loans that are directly owned by the United States, such as the mortgage at issue here.[1] *See* Frequently Asked Questions: Homeowners' Emergency Mortgage Assistance Loan Program (HEMAP), Pennsylvania Housing Finance Agency, http://www.phfa.org/hsgresources/faq.aspx (last visited April 24, 2014) (noting procedures for RHS-owned loans).

Together, the "comprehensive statutory scheme" of Act 6 and Act 91 "demonstrates an extensive program designed to avoid mortgage foreclosures" in Pennsylvania. *Bennett*, 554 A.2d at 891.

## 2.   Applicability of Act 6 and Act 91 to RHS-Owned Mortgages

There may be some uncertainty as to whether Act 6 and Act 91 apply to loans owned by RHS. Prior to 1990, the federal statutes and regulations that governed the Farmers Home

---

[1] Loans insured by Title II of the National Housing Act, popularly known as FHA-insured mortgages, were specifically excluded from protection under Act 91 because at the time Act 91 was enacted the U.S. Department of Housing and Urban Development had a similar program that applied to FHA-insured mortgages. *See Paz v. Housing Fin. Agency*, 722 A.2d 762, 764-66 (Pa. Commw. Ct. 1999). No such exclusion applies to loans made directly by RHS pursuant to Title V of the Housing Act.

Administration ("FmHA") – the precursor to RHS – were silent about whether FmHA had to follow state foreclosure procedures.[2] *See United States v. Mikolaitis*, 682 F. Supp. 798, 802 (M.D. Pa. 1988) (noting "the absence of an explicit congressional directive" as to whether the relevant federal laws preempted state foreclosure procedures). Amid this statutory silence, district courts came to differing conclusions. *Compare id.* (finding that FmHA "must comply with Act 91") *with United States v. Black*, 622 F. Supp. 669, 673 (W.D. Pa. 1985) (holding that relevant federal law preempted Act 6 and Act 91). In *United States v. Spears*, 859 F.2d 284 (3d Cir. 1988), the Third Circuit resolved the question. It held that when a loan is owned by FmHA, a foreclosure is filed in federal court, and third-party interests are not affected, Act 6 and Act 91 are preempted. *Id.* at 290-91 (finding it "significant that the mortgagees [sought] to enforce state procedural, rather than substantive, law."). If *Spears* controls the analysis here, Act 6 and Act 91 are clearly preempted.

Soon after the Third Circuit's decision, however, Congress amended the National Housing Act, and added the following:

> In foreclosing on any mortgage held by the Secretary under this subchapter, the Secretary shall follow the foreclosure procedures of the State in which the property involved is located to the extent such procedures are more favorable to the borrower than the foreclosure procedures that would otherwise be followed by the Secretary.

42 U.S.C. § 1475(b), PL 101-625, Nov. 28, 1990, 104 Stat. 4079. Legislative history suggests the timing of the amendment was no coincidence. At hearings on the state of rural housing programs, Congress heard testimony from advocates of such an amendment. At least one of those witnesses was clear that the addition of what became § 1475(b) was needed for one state specifically: Pennsylvania. He stated that his national organization's support for the proposed

---

[2] Pursuant to the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, PL 103-354, Oct. 13, 1994, 108 Stat. 3178, duties for the loans at issue here were transferred from FmHA to the Rural Housing Service. *See* 7 U.S.C. § 6943.

amendment "stem[med] from FmHA's recent steadfast refusal to follow Pennsylvania foreclosure law requiring lenders in that state to advise all borrowers facing foreclosure of the availability of a state-sponsored mortgage relief program and requiring foreclosure to be delayed until borrowers have had an opportunity to apply for that relief." *Rural Housing*: *Hearing on Housing and Community Development Act of 1989 Before the H. Comm. on Banking, Finance and Urban Affairs,* Serial No. 101-29*,* 101st Congr. 496 (1989) (statement of Gideon Anders, National Housing Law Project); *see also id*. at 425 (statement of Moises Loza, Acting Executive Director, the Housing Assistance Council, Inc.) ("When there is a way to salvage rural housing loans, or lessen the difficulty of borrowers with problems, via state procedures, [they] should be utilized."). That Pennsylvania "state-sponsored mortgage relief program" is, of course, HEMAP, with the delays in foreclosure those specifically proscribed in Act 91. Soon thereafter Congress adopted the proposed language as § 1475(b). Thus, not only is the statute clear, but it appears to have been written for precisely this situation: RHS's apparent failure to comply with the procedures of Pennsylvania's Act 91.

Since the enactment of § 1475(b), it does not appear that the Third Circuit has had an opportunity to address it or the viability of *Spears* as it relates to Act 6 and Act 91. In fact, only two indexed decisions from Pennsylvania federal courts have discussed § 1475(b) at all. In *Martinez* the Court noted the law's requirements, but found that neither party had raised it and denied RHS's motion for summary judgment regardless. 2004 WL 2827045 at *3 n.5. And in *United States v. Asken*, No. 01-26, 2002 WL 32175416 (E.D. Pa. Oct. 28, 2002), the Court found that RHS still need not follow state procedures. *Id.* at *3.[3] Finally, in *Brown*, in an Order denying RHS's motion for default for the first time, the Court also noted the amendment, but as in

---

[3] *Asken* relied on *Spears*, notwithstanding the fact that it appears to have been superseded by § 1475(b).

*Martinez*, denied the motion on other, independent grounds. *See Brown,* No. 13-4530, Order Den. Mot., ECF No. 7 at 1 n.1 ("In addition, [RHS] – under its statutory grant of power – is required to give the defendant the benefit of procedural safeguards provided by state law in mortgage foreclosure actions.") (citing § 1475(b)).[4] In each of these cases, it does not appear that RHS complied with Act 91. And in each of them, as here, the homeowners were not represented by counsel.

That § 1475(b) has gone largely unremarked upon since its passage may be because RHS follows Act 91 as a matter of course. But, if it does not, as the three cases above suggest, it is more likely the result of default judgments escaping judicial review, as described in *Yakubets*. *See* 2014 WL 960787 at *1 (finding default judgments "especially dangerous where a region of the legal landscape is typified by defaults"). Regardless, given Congress' clear directive, it seems doubtful that RHS may decline to follow Pennsylvania foreclosure procedures if those procedures are more favorable to the borrowers. *See, e.g., United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."); *United States v. Walter Dunlap & Sons, Inc.*, 800 F.2d 1232, 1239 (3d Cir. 1986) (noting the importance of the "force of a congressional directive" in dispute about the intersection of federal and state law in Farmers Home Administration matter).

---

[4] Courts of the 8th Circuit have mentioned it more often. *See, e.g., United States v. Jacobsen*, 319 F.3d 323, 324 (8th Cir. 2002) (per curiam) ("It is clear that [§ 1475(b)] was intended to require [RHS] to follow state procedures."); *United States v. Lowe*, 655 F. Supp. 2d 925, 927-28 (S.D. Iowa 2009) ("Congress incorporated state law procedures into federal law when it" enacted § 1475(b)). Those Courts have tried to determine whether a homeowner was seeking to enforce procedural or substantive rights under Iowa law. *See id.* While I draw no conclusions about whether such a distinction would be dispositive in this case, the Supreme Court of Pennsylvania has noted that "the Act 91 notice requirements appear to fit comfortably in the procedural realm as they set forth the steps a mortgagee with a cause of action must take prior to filing for foreclosure." *Vukman*, 77 A.3d at 553; *see also Ayers v. Phila. Hous. Auth.*, 908 F.2d 1184, 1192 (3d Cir. 1990) ("Act 91 has numerous detailed procedural requirements, and specifically regulates what type of information must be put into termination notices.").

### 3.   The Favorability of Act 6 and Act 91 to the Defendants

Assuming *arguendo* that it applies here, § 1475(b) requires RHS to follow state law only to the extent that it is more favorable to the homeowner.[5] Here, the Notice allegedly mailed by RHS gave the defendants significant notice prior to filing this action. Additionally, the Notice provided the defendants with the delinquency amount, the notice of the right to cure that delinquency, the notice of a right to a discussion with RHS and the notice of a right to an administrative appeal hearing. In sum, to the extent that the Notice was actually provided to the defendants, the procedures followed appear to be at least as favorable to them as Act 6, which requires similar notice, but does not provide for any administrative appeal hearing or right to meet with a lender. *See Spears*, 859 F.2d at 288 (finding that the notice given by RHS appears to cover substantially more than the items listed in Act 6).

I cannot reach the same conclusion about Act 91. To the extent that the defendants were eligible for HEMAP – a state program that could have potentially cured their delinquency – the Notice, which does not notify them of their right to apply for the program, or notify them that if they do apply, a foreclosure will not be filed against them until PHFA renders a decision on their application, is clearly not as favorable to borrowers as the procedures of Act 91.[6] *See Bennett*, 554 A.2d at 889 ("To insure that the emergency assistance made available under [HEMAP] would not be made illusory by an owner's lack of awareness of the program's existence, Act 91

---

[5] In *Spears*, the Circuit noted that following Act 91 in that matter was essentially a procedure for procedure's sake, because the homeowner was likely ineligible for the program. 859 F.2d at 284. Nothing on the record here suggests that the defendants are ineligible for the program.

[6] In the complaint, RHS asserts that it "has complied with the requirements of 7 C.F.R. 3550.207," a USDA regulation that, in some circumstances, allows a borrower to defer payments for up to two years. Compl. ¶ 12. However, it does not describe what it did to comply with this statute, or whether the procedures it did follow were as favorable to the defendants as Act 91. *See Martinez*, 2004 WL 2827045 at *4 (holding that under 7 C.F.R. 3550.207 "a borrower seeking moratorium relief within the proper time period must be given an opportunity to demonstrate his or her eligibility for such relief.") (citation and internal quotation marks omitted).

12

requires that notice of foreclosure proceedings be given to the homeowner to advise him of the program itself."). It is possible that, despite what is before the Court, RHS complied with these requirements. However, no such compliance can be gleaned from the record here.

Because I will deny the motion for a default judgment for other reasons, as explained above, I need not state conclusively whether Congress' addition of § 1475(b) abrogates the Third Circuit's holding in *Spears*. However, to the extent that RHS refiles a motion for default judgment, it must specifically address whether it followed Act 91, and to the extent it did not, provide an explanation for failing to comply with § 1475(b).

### C.  Attorney's Fees

I will also deny RHS's request for $8,376.45 in attorney's fees. Pennsylvania law "requires that a contractual agreement setting attorney's fees be 'reasonable.'" *Webster Capital Fin., Inc. v. Chetty Builders, Inc.*, No. 10-5207, 2011 WL 2039058, at *10 (E.D. Pa. May 20, 2011) (citations omitted). "[A] fee-shifting agreement is not enforceable to the extent it would result in an award in excess of a reasonable rate." *In re Nixon*, No. 09-417, 2009 WL 1845229, at *8 (E.D. Pa. June 25, 2009) (citations and quotation marks omitted).

It is unclear why RHS believes it is entitled to fees equal to five percent of the principal balance of the defendant's mortgage. *See* Compl. ¶ 10. It is possible that such a request stems from a time when mortgages contained a provision for a five-percent recovery. *Cf. In re Johnson-Allen*, 67 B.R. 968, 976 (Bankr. E.D. Pa. 1986) (analyzing reasonableness of mortgage that allowed for attorney's fees of five percent of the principle balance). However, the mortgage at issue here does not provide for a percentage-based fee recovery. Instead, it provides for "reasonable attorney's fees." ECF No. 1, Ex. A at 2.

"The starting point for determining the amount of reasonable attorneys' fees is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' or the lodestar." *Pugliese v. Chrysler Corp.*, No. 95-2771, 1998 WL 34587, at *1 (E.D. Pa. Jan. 29, 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Here, besides the complaint, RHS submitted two short motions.[7] Bankruptcy Judges of the Eastern District of Pennsylvania, who are more familiar with uncontested foreclosures, have concluded that in such circumstances three to four hours of work by an attorney is generally reasonable. *See In re Gordon-Brown*, 340 B.R. 751, 759 (Bankr. E.D. Pa. 2006); *In re Smith*, 76 B.R. 426, 432 (Bankr. E.D. Pa. 1987). Accordingly, without a more detailed explanation, I do not find that $8,376.45 constitutes reasonable fees. In doing so, I need not reach a conclusion about whether three to four hours of attorney work would be reasonable. Instead, because RHS has not demonstrated it is entitled to $8,376.45, and because the motion will be denied without prejudice, it will be granted leave to provide additional detail for the fees it requests.

## IV.   CONCLUSION

For the reasons explained above, RHS's motion for a default judgment is denied without prejudice. Should RHS submit a renewed motion with sufficient evidence, I will determine whether a hearing is appropriate.

An appropriate Order follows.

---

[7] In fact, the pleadings here are largely identical to the pleadings RHS filed in *Brown*, further demonstrating that the amount of fees requested by RHS is excessive. *Compare* ECF No. 6 *with Brown*, No. 13-4530, ECF No. 5.